We have four cases on the calendar this morning, a patent case from the Patent Office to Veterans Appeals and a case from the Court of Federal Claims that is being submitted on the briefs and will not be argued. The first case is Hewlett Packard v. MPHJ Technology Investments, 2015-14-27. Ms. Morrow. Thank you, Your Honor. The Board's decision not to invalidate Claim 13 of the patented issue is not supported by substantial evidence. If you look at the Board's final decision, it refers to HP's discussion of Claims 1, 2, and 7 in the petition. The problem with that is that its site to that discussion is not to the discussion of the claim limitation it ruled on, which is in Claim 9, Element 2. HP's discussion in the petition of Claim 9, Element 2, and the entire list of modules was present in the ScanJet 5 prior art. If we look at the Board's decision, it refers to what was identified in the petition as Claim Element 13.2. That Claim Element maps to 9.2. In the petition, HP expressly stated that the ScanJet utility managed lists of destinations and workflows and it started automatically when Windows was started. A person of ordinary skill would recognize from this that a list of active processes and programs would be stored in a registry. Accordingly, the petition definitely addressed the list at issue. In addition, HP provided an explanation of that from its expert, Mr. Wibbles. Mr. Wibbles, in Paragraph 132, confirms that ScanJet uses Windows. In Paragraph 132, he talks about the troubleshooting guide for which shows that software files were reinstalled if appropriate components were absent. Evidence that shows, in his opinion, that the COM components of the Microsoft operating system were used, just like the COM components were used in a patent. The examples he cites are in the sections at pages 109, 114, and 118, where he says that system problems that the software was experiencing was a result of multiple applications trying to use these COM components that are found on a registry. As a result, there was a practicing of Element 9.2 in ScanJet. Ms. Moreau, I would like to ask you about Claim 13, Obviousness Issue. Yes, Your Honor. Is it not correct that you can file another IPR proceeding on that claim and that issue? It is correct, Your Honor. We are not time-barred. There is no underlying litigation for HP. Our concern with that, as a remedy, is that first we have to file a new petition and start all over again, and second, that the Patent Office has been looking at subsequent follow-on petitions and providing a similar redundancy analysis on those, taking the position that a petitioner had had one bite at the apple and shouldn't get one bite at the apple again in a similar petition. And we provided a list of those examples in our papers. And so our concern is that if we are— Doesn't that run into a precedent of not being able to interfere in the decision to institute? With regard to that, Your Honor, we think that the Akkadis and Versada decisions did leave open a couple of avenues for review. If the question goes to the fundamental jurisdiction of the agency or if the question is one where the agency has clearly diverted from Congress's mandate. And we think this is such a situation. Has it diverted from Congress's mandate here? Well, if— To just use their discretion under the statute to select some grounds for an IPR? Well, if you look at the legislative history, and this is a piece of the— What case can you cite me that suggests that not following legislative history is so completely departing from the statute that we could grant such extraordinary relief? I apologize, Your Honor, for not answering your question directly. With regard to the section 316.11. Section 316.11 sets clear time limits for petitions. It also says, unlike the interference scheme, which gave the director substantial deference, it says that the agency shall act within 90 days on every petition, shall commence the review where the burden of proof has been met, and shall conduct each review under this chapter. And so we think the agency has clearly been directed to conduct review on all the petitions fairly presented to it. And if you look— They have no discretion whatsoever to determine whether IPR should be granted or not, if they determine that there's possibly a grounds. I do not believe they do. The language is mandatory. It says they shall institute, but only if they find the requisite statutory grounds are present. That seems to be putting a lot of weight on the word shall. I mean, there's lots of precedent all over the place that says shall is sometimes a command and sometimes still gives discretion. How do we know here that it's a command? If you do look at the legislative history, there was a bargain basically made between the director and Congress. At the legislative history, Senator Kyle says that the Patent Office has expressed a preference for a particular model of examination and believes it can comply with deadlines if that model is put into place. Even if we accept your argument, how do you get beyond the judicial bar on the institution decision? I mean, the argument you're making would gut the bar on judicial review. No, Your Honor— Because then we would have to look at whether proper grounds have been presented for a patentability argument, and if they had, your view is they had to grant review, so we would have to reverse them. That would put us in the instance of every single case where somebody who is dissatisfied with the decision can appeal that decision. I think the same would go for the people who get review. If it's an automatic review and it's a patentability thing and that we can review that, then they're going to say, well, it shouldn't have been granted at all, and we should have granted the shall language there. If the agency is going to deny part of a meritorious petition— But we know it's meritorious. That's their call, isn't it? But they didn't make it in this instance, Your Honor. They issued a redundancy rejection that the Solicitor's Office has indicated is not a decision on the merits— How can you give me a rule of law that is limited in a way that won't open the floodgates to us reviewing every single initiation decision, which we're clearly barred from doing? Only that the specific adoption of the deference doctrine, the redundancy doctrine that the solicitor has been defending here, is something that is not a proper exercise of agency discretion. The agency still has— So you think that they can't say, this is redundant, we're not going to review these? They can't say— So could they just deny it without giving any reason? It's like a district court. They can't say, we're going to take up two of your tort claims and not— It's not like a district court. This is discretionary review. They clearly have the authority to deny review altogether without any reason. They only have the authority to deny review if there's a statutory bar or the threshold of the prior art has, in their expert opinion, not been met. And the reason it wouldn't open the floodgates is— And we can't review that decision. All we're asking them to do is make that determination on the merits instead of making the determination on the basis of agency convenience and workload. And if they had made a decision on the merits and it had been against us, we would not be back in front of you because of the bar that the court has clearly articulated in its case law. Instead, the other way that the agency has approached this in other cases that has provided the petitioner a bit more ability to be heard on this issue was, in one of the cases, they provided notice to the petitioner that they were going to deny a part of the petition and let the petitioner explain why the remaining grounds weren't redundant. And that kind of a process, had it been adopted by the agency, similarly wouldn't have us back here complaining that there had been some kind of abusive discretion. It's only the notion that you go file your petition, it's a meritorious—you want a review of the petition to see if it's meritorious, and they decide not on a statutory ground that we're challenging here. So we don't think the decision here would unduly implicate the court's review of other interference decisions on— But it would prevent the PTO from refusing to initiate on redundancy grounds in any case whatsoever. Because your argument is essentially that that's not a valid reason for refusing to initiate review. They could refuse to initiate review if, in fact, they looked at the prior art and determined that the grounds were indeed redundant. But here what happened is they didn't assess the art on the merits, and they determined that in anticipation— How do we know that? The solicitor's office has indicated the decision was one of efficiency and not one on the merits. That was my question, though. Your view is that they don't have the statutory authority to say this is redundant, and in terms of agency efficiency, we're not going to look at it? That is our view, yes. Where in the statute does it even remotely suggest that that's not a permissible ground? They have been instructed to conduct certain reviews— You're coming back to the word shall, and that's mandatory, right? Yes. Okay. And then the other issue is that the way that the agency is proceeding and taking up these issues piecemeal is we don't think consistent with the Administrative Procedures Act. Because in a situation like this where there's a formal adjudication, usually what happens is the agency is directed to take up all issues in the petition that are fairly presented to it and issue a decision on it on the merits. And here the agency has elected not to do that, and we do think that's inconsistent with basic instructions in the statute on how the agency is to progress when it has been assigned an adjudicative function like it has here. You can save the remainder of your time if you like. I'll continue as you wish. I did just want to, with the Court's leave, point out a little more of the evidence with regard to Claim 13. There was also a concern we had that the Board gave improper weight to failure to respond to arguments in the reply. They indicated that HP had not responded to all of the petitioner's arguments. And I just wanted to correct the record on that, which is that at pages 10 and 11 of HP's reply, we did respond to their arguments. We didn't respond to all of them, and so there was no reason for the Board to conclude that HP had somehow waived the presentation of evidence on Claims 9 and 13. So that was at page 10 and 11 of our reply brief, and there we responded to their argument on the enable virtual copy operation means. It's not listed by claim number, but that's also in Claim 9, the element before the element that the Board ruled on. And then finally, to the extent there's any concern about Mr. Myers' purported case-ending admissions, we don't think that that could support the Board's decision. He was, simply speaking, he'd been asked about claim construction on another element in the passage right before the Board cited. He was asked again about claim construction on this element, answered in terms of what was in the patent, and we don't believe made any admission that the claims were not invalid over the Spanjet or Cotte references. If I could reserve the rest of my time. Thank you, Ms. Morrow. Mr. Ganti for MPHJ, and you're going to yield five minutes to the PTO. May it please the Court. The appellant has raised challenges with respect to the final written decision and the non-final institution decision. I'll be addressing the issues pertaining to the final written decision. Appley respectfully requests that this Court affirm the Board's decision that Claim 13 is not anticipated by the prior art of record. This issue is reviewed under the substantial evidence standard. There are two pieces of substantial evidence that the Board relied upon in concluding that Claim 13 is not anticipated. First, the Board looked at the prior art and relevant portions of the prior art as it maps to Claim 13. Mr. Ganti, I heard you say that you wanted to talk about the merits issue, but you're here representing the appellee, and so I'd like to ask you as well as Ms. Nelson for the PTO about this institution point. The PTO denied institution with respect to Claim 13 on the likelihood that the challenge claims are unpatentable based on the grounds on which we institute into Part A's review, but that premise wasn't met because the Board did not find the claim unpatentable under 103. What are we to make of the fact that the PTO's premise didn't turn out? I think the first step of the inquiry is looking at the differences between the obviousness challenge in the IPR institution decision versus the anticipation challenge in that petition, and based on the PTAB's review of the petition, they did not see any substantial difference between the anticipation and the obviousness challenge, particularly with respect to the claim elements that were not found in the prior art. The Board found that 13 wasn't anticipated, right? That's correct. That was the premise upon which they stated that the ground was redundant. It doesn't turn out to have been redundant. The Board hasn't evaluated the question of obviousness to a final written decision by considering the full record on the obviousness issue because in their preliminary institution decision, they deemed it was redundant and they excluded that part. They excluded that ground in the final written decision. So the Board never considered the obviousness challenge in light of the full record, which should include the appellee's right to provide some sort of expert testimony against that obviousness challenge. None of that was in the record at the time that the Board made its redundancy determination. But going back to the anticipation finding in the final written decision, the Board did consider relevant citations to the prior art. The prior art is the most important piece of evidence to the substantial evidence requirement. In addition, the Board also considered expert testimony offered by appellee. Where specifically and what pieces of evidence does show that the Board considered the scanjet reference? In the final written decision in the language, it's on A86, the Board outlined four among a number of arguments that the patent owner has made. These arguments were presented in the patent owner response. And in those arguments, the patent owner, the appellee, cited to the prior art, scanjet 5. Wait a minute. You're talking in A86, but A86 is about claim 14. We're talking about claim 13, aren't we? Right under the heading SJ5. Right. That's with regard to claim 14. I thought this appeal was about claim 13. In the second paragraph under the heading scanjet SJ5, the Board explains that the patent owner makes a number of arguments regarding claim 13. And then the Board outlines four of those arguments that were made. One of the arguments that I understand HP to make is that the Board incorrectly restricted itself to evidence proffered with respect to claims 1, 2, and 7. What's your answer to that? The Board, they're obviously referring, HP there is obviously picking up on the statement at Appendix 87. That's correct, Your Honor. What's your answer to that argument? It's a two-part answer. The first part is that that's one sentence in the final written decision language that says, generally refers to claims 1, 2, and 7. But more importantly, there's a whole analysis that exists before that one sentence, which is an patent owner response, where a number of arguments were made. And the Board picked four among a number of arguments, filtering them down to what they believe were the most persuasive arguments as to why claim 13 is not anticipated. Those arguments reference the Scanjet 5 patent, page 34 of that patent. It references expert witness testimony offered by the appellee in the form of Mr. Aren't they focused on claims 1, 2, and 7? Those particular four arguments address features that are not in claims 1, 2, and 7. Those are features that are found in claims 9 and claims 13. Specifically, maintaining a current active module means, that's something that's found specifically in claims 9, claims 11, and claim 13, but not in claims 1, 2, and 7. But the problem is, the Board doesn't even reference anywhere that you considered the argument that HP provided with respect to claim 9, which is, I think, the same as claim 13, is it not? Right. Those are same limitations. Instead, in rejecting all of these arguments that you're referencing on page 46, they say it only refers to analysis of claims 1, 2, and 7. It doesn't say anything about the analysis for claim 9. How do we know that the Board looked at HP's arguments with respect to claim 9 and to map all these things? The biggest clue is that these particular arguments reference claim elements that are only found in claims 9 and 13, such as the active modules. Why is the Board saying the petition looks at claims 1, 2, and 7 for this argument, instead of at claim 9? One reason is that the Board found that claim 9, while it has the same limitations as claim 13, some of those limitations are alternative, and therefore, the Board did not give them any patentable weight. From the Board's perspective, they're considering claim 9 as so broad that... Okay. Can we move beyond just what the decision says? This decision is really sloppy, and it's hard to parse, but where in the record is substantial evidence supporting this analysis? In the record, these four arguments were made in the patent owner response, which is... So the substantial evidence is just basically they rejected HP's arguments and accepted your arguments that these were shown? Yes, Your Honor. In addition to that, the arguments that were accepted cite to the substantial evidence, which is expert testimony and the prior art. And by framing the arguments that were expressed in the record, those arguments cite to the substantial evidence. So it's a way of the Board to short circuit and reference just the argument when really that argument references a whole bunch of other evidence underneath it. Again, isn't relevant here the several claim charts that appear at... 76. It seems that in those claim charts, HP tells the Board to look to the reasons cited for claims 1, 2, and 7, the relevant disclosure of SJ5 as it relates to claim 9. And then for claim 13, HP cross-references to other claims, including 9. It cites to 1, 2, and 7. Is there anything relevant there? The only thing that's relevant there, Your Honor, is possibly the second sentence that says, SJ5 utility maintains a list of destinations and workflows. That might be the only thing that's extra. Well, what I'm saying is if they're... If Hewlett-Packard is directing the Board's attention to these claims, can it be argued that the Board was directed to 1, 2, and 7 for 9, and that 13 and 9 are the same, so they would have gone to 1, 2, and 7? I think... I believe that's correct, Your Honor. It's a matter of looking at these claim elements. Claim 9 has the same claim elements as claim 13. Some are optional in claim 9, which is why that claim was ultimately held. For claim 9, which is the same as 13, they were told to look to 1, 2, and 7. That's right. And then the Board cites 1, 2, and 7. That's correct. I have nothing further, and if there are any other questions, I'd like to yield to counsel for intervener. Thank you, Mr. Ganti. Ms. Nelson. May it please the Court. Good morning, Judge Laurie. This Court lacks jurisdiction to review the Board's decision not to institute... Yes, yes. Leaving aside the jurisdictional question, I'm just wondering, because I had a... There are cases in the Court, and I had one earlier this week. Why does the Board follow, and I'm sort of picking up, I think, on what Judge Laurie was saying earlier. Why does the Board go to anticipation and say, we're not going to look at obviousness because it's redundant, when it would seem to me you'd want to consider them both in case you don't find anticipation, as happened here. I realize this doesn't relate to the jurisdictional question, but it does seem to be something that we're seeing. I saw it in the case earlier this week. Why does the Board do this? Why doesn't it say, okay, we're going to look at... You've urged us anticipation and obviousness. We'll look first at anticipation, and then if we don't find anticipation, we'll go to obviousness. Isn't that the better approach to cover all the bases? I think in this case that I looked at the evidence and had found, at least from the reasonable likelihood standard, it's found pretty good evidence of anticipation. But then, as Judge Laurie points out, the Board said, no anticipation. I mean, it just seems logical that if you're sitting there, okay, we think it's anticipated, but the obviousness argument has been made. If it's not, we'll institute that too, and if we need to get to it, we will. Why doesn't the Board do that? Well, I don't think that's always the case that it doesn't do it. I think in this particular case, one of the reasons it may have decided to do that is it thought that, at least at the reasonable likelihood standard, there was pretty good evidence of anticipation. In other words, the very premise of their decision was shown not to have been valid. In other words, Claim 13 was found not to have been anticipated. I think it found that there was a reasonable likelihood, but then when it went on and evidence, it found that, in fact, the preponderance of the evidence standard was not met, and therefore, there was... Isn't your answer is that that's irrelevant in view of the statute? Well, I think it is irrelevant in view of the statute, but I was just trying to address Judge Schall's question, and yes, I think they can deny for any reason. But the other point I would think in this case is that I think they looked that there are these two references... The problem is they're doing that in terms of efficiency, and it's turning out to be completely inefficient because anticipation is sometimes harder to show, and they're finding either that it's not anticipated, which is going to force you to go through another round if HP files another IPR on obviousness, or they find anticipation, and then we reverse and send it back and find it not anticipated. What may have been clearly obvious, nobody can reach until a new IPR. This efficiency argument seems ill-considered in the long-term scheme of this. I'm not sure it is in this circumstance, however. First of all, in the lion's share of cases, I think... Well, it's certainly going to, I suspect, cause another IPR to be filed on this. There may be another IPR filed. I'm not sure that necessarily would come out differently, and the reason I say that here is because both the user's guide and the press release are directed to the same Scanjet 5 printer. The press release is this six-page document. The user's guide is a 140-page detailed document about the same scanner. HP has failed to point to any evidence that's in the press release that's not in the user's guide, and particularly with respect to the relevant limitation here. The only limitation they found not to be anticipated, which is this limitation with respect to the list of available module means. So I think in this case, I'm not sure that the board was really that off-base, and I think it was a very efficient process. Moreover, I just want to follow up on what Lori asked at the onset. They had several opportunities that they did not pursue. One, they could have asked for reconsideration of the obviousness, the denial of the obvious ground, and they never did that. Secondly, during this proceeding, they could have filed another petition with the obviousness and asked for joinder, or not actually joinder. And secondly, even now, because there's, to my knowledge, no ongoing litigation, there's no time bar, they could also file another petition at this point and provide more detailed explanation of why, even though the board found it not to be anticipated, why there's  no further questions. Ms. Morrow has a little time, two and a half minutes. Thank you, Your Honor. First, just a note on the record with regard to the evidence underlying claim limitation 13 in the actual petition as opposed to the expert declaration at A109. It does indicate that SJ-5 anticipates 13 preamble through four through the same reasons. Nine are anticipated by SJ-5. And so there was no reference there to claims one, seven, et cetera. The reference to claims one, seven, et cetera, were in the expert declaration where the expert referred back to the evidence that he had compiled in connection with those other claims. That's what I was referring to, the 2275? Yes, Your Honor. I believe that's the chart accompanying the expert declaration. And so the actual petition identifies the basis as being the same as for claim nine and does not refer the court to those other provisions. The expert chart cites those other provisions just to provide additional support because the other limitations talk about the workflow that he then talks about in more detail with regard to claim nine. So we think the record is clear that HP sought review on the evidence on claim nine and the board looked at the wrong evidence in looking at claims one, two, and seven to the exclusion of the evidence on claim nine. Now, with regard to the IPR issues, in the lion's share of cases, there would be no fix because the deadline would have passed. We're just in this unique situation because MPHJ has elected to press its demands against HP customers instead of HP and there's no pending litigation. In addition, if we were to refile, we've cited a number of petitions to the court where the board has exercised its discretion and held that because a petitioner or someone in privity with a petitioner had had an opportunity to be heard on similar art that the court would deny that petition for efficiency's sake. And so there is no assurance that were we to file another petition, it would not receive the same quick disposition that the claims of obviousness did in this petition. And finally, there's been a little bit of kind of post hoc explanation of why the ground wasn't that significant, but there was key argument in the record by the other side that this would have responded to. For example, they said that the Scanjet reference wasn't a server and the press release showed the thing network deployed. And so there were specific distinctions between the two that had we been given the opportunity to explain them to the patent office, we feel confident they would have not been able to make the same redundancy decision on the warrants rather than on expediency. Thank you, Ms. Morrow. We'll take the case on revisement.